CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA - FILED
DEC 23 2009
BY: JOHN F. CORCORAN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| REUBEN CHARLES JONES, | ) | Case No. 7:09CV00032 |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | |
| S. K. WASILESKI, ET AL., | ) | By: Hon. Glen E. Conrad |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Reuben Jones, a Virginia inmate proceeding pro se, brought this action as a civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his complaint, Jones alleges that on five specific occasions, the defendant Roanoke City Police Department (RCPD) officers,[1] arrested him, or issued him a criminal summons, for aggressive solicitation without probable cause, in violation of his First and Fourth Amendment rights, when he was merely standing by the road with a sign about Jesus. He also alleges that RCPD Chief Gaskins knew of this trend, but failed to take policy action. Upon review of the record, the court finds that the defendants' motion for summary judgment must be granted, while plaintiff's motion for summary judgment must be denied.

## I. Background

### A.

Jones sues the five charging officers and the Chief of Police under § 1983, for violations of constitutional and state law, seeking monetary and injunctive relief.[2] He admits that he has been charged and convicted more than 100 times for the same conduct, using the same sign. He alleges, however, that the officers knew or should have known that his conduct on the five

---

[1] The defendants are: RCPD Chief A. L. "Joe" Gaskins, S. K. Wasileski, K. P. Malloch, M. E. Thompson, J. B. Wilburn, and T. L. Person.

[2] Jones also sued other defendants who were magistrates in the City of Roanoke. By previous opinion and order entered March 19, 2009, the court dismissed the claims against these defendants, pursuant to 28 U.S.C. § 1915A(b)(1), on grounds of judicial immunity.

occasions in question did not violate the ordinance under which he was cited—Roanoke City Code § 21-44.1, prohibiting and defining aggressive solicitation. In several instances, Jones allegedly told the officers that similar charges had been dismissed in the recent past. He also alleges that the police chief knew of past charges under § 21-44.1 that had been dismissed, but failed to ensure that RCPD policy prevented such wrongful arrests in the future, causing Jones to be unlawfully arrested.

The defendants filed a motion to dismiss. Jones moved for a preliminary injunction, based on his alleged misunderstanding of the aggressive solicitation ordinance during prior proceedings.[3] By memorandum opinion and order entered July 17, 2009, the court denied the motion to dismiss on the merits of Jones' claims and took defendants' qualified immunity defense under advisement, pending further development of the record. Specifically, on then-submitted records, the court could not determine the exact provision of § 21-44.1 under which Jones had been charged or whether any of the defendant officers were on notice that such prior charges had been dismissed. The court also denied Jones' motion for preliminary injunctive relief, but construed his motion as a request for injunctive and declaratory relief regarding his allegations in the complaint itself.[4] Finally, the court issued a scheduling order, setting the matter for trial on January 26, 2010. The parties have engaged in discovery and have now filed opposing motions for summary judgment that are now ripe for decision.

---

[3] It seems that Jones only recently discovered that the ordinance under which he has been regularly charged is entitled "aggressive solicitation." Jones apparently agrees that his activity constitutes solicitation, but argues that it does not involve "aggressive" behavior. As demonstrated below, however, the charges brought by the defendants were premised on the venue for the solicitation rather than the demeanor of the solicitor.

[4] Jones moved for an injunction that would: (1) direct RCPD officers to include the "aggressive" element of the charge on any arrest warrant citing a violation of § 21-44.1; (2) direct Roanoke City magistrates to inform people charged with violating § 21-44.1 that the charge is not merely for "solicitation"; and (3) direct the Roanoke City General District Court to change the plaintiff's past "guilty" pleas to violations of this code section to "not guilty" pleas, because he was misled into believing he was guilty based on the charging language on the arrest warrants. The court denied the motion for preliminary injunction, finding that the charging documents notified Jones sufficiently of the nature of his charge and that he faced no imminent harm from his past guilty pleas under the ordinance.

**B.**

Jones' submissions and defendants' affidavits provide the details from each of the incidents in question. The material facts are not in dispute.

**1. Three Arrests**

On May 12, 2007 and January 19 and March 22, 2008, Jones was arrested for violating § 21-44.1.[5] On each occasion, an officer saw Jones standing on a median or on or beside an access ramp, holding a sign reading something like: "What would you do if Jesus were here? God bless you." Each charging officer also saw Jones enter the roadway and reach into one or more vehicle windows to retrieve money offered to him by travelers. On January 19 and March 22, 2008, Jones' sign had a dollar symbol in each corner.[6] Because § 21-44.1 prohibits solicitation of money or anything of value, using words or other device, while standing on or going into any street or highway, including medians, on ramps, and exit ramps, the officers believed Jones' behavior violated the ordinance and arrested him accordingly.[7] § 21-44.1(a)(1) and (b)(6). After the arrest on January 19, 2008, Officer Person found $48.00 in one and five dollar bills in Jones' pockets.

Each of the three charges went to trial before the Roanoke City General District Court. Defendants assert that as to the charges issued on May 12, 2007 and March 22, 2008, Jones made no argument that the charge violated his First Amendment rights.[8] They state that the trial judge

---

[5] The arresting officers on these dates were Wasileski, Person, and Malloch, respectively.

[6] Jones states in response to defendants' motion that the police reports said Jones was standing on the "side" of the road and did not indicate that the sign had dollar symbols on it. He also complains about defendants' interrogatory response indicating that the signs confiscated from Jones have been destroyed, pursuant to RCPD policy regarding storage of evidence, and for a similar reason, any video taped footage of the challenged incidents no longer exists. Jones does not, however, dispute that his sign often had dollar signs in the corners.

[7] Jones alleges that each arresting officer took Jones before a City Magistrate, who found probable cause to support the arrest and ordered that Jones be detained pending trial.

[8] Jones alleges that he argued in each case that the aggressive solicitation charge violated his First Amendment right to free speech.

dismissed each case upon finding that the evidence was insufficient to support a conviction for violating § 21-44.1. The charge issued on January 19, 2008 was also dismissed; however, defendants do not dispute Jones' allegations that on this occasion, he argued that the charge violated his First Amendment rights. The Roanoke City General District Court is not a court of record, however, and the documentation submitted does not indicate the grounds on which the Court dismissed any of the charges. Officer Malloch recalled observing another trial in General District Court in April 2008, in which Jones was found guilty of aggressive solicitation at the same intersection where Malloch arrested him on March 22, 2008. The judge warned Jones then not to solicit money from travelers at that intersection in the future.

### 2. Charges Issued on April 8, 2008 and July 4, 2008

Officer Wilburn saw Jones, on April 8, 2008, standing on the southbound ramp of Interstate 581 at Elm Avenue, holding a sign reading: "What would you do if Jesus was here? God bless you." The sign had dollar signs in the corners. Wilburn also saw Jones enter the roadway and retrieve what Wilburn believed was money from the driver or passenger of a vehicle. Knowing that Jones had been arrested on previous occasions for similar conduct, Wilburn believed that he had probable cause to arrest Jones for violating § 21-44.1. He wrote Jones a summons to appear in court on the charge.

On July 4, 2008, Officer Thompson wrote Jones a summons for similar conduct. Thompson saw Jones standing on the median near a busy intersection, holding his "Jesus" sign, but does not recall whether dollar symbols appeared on its corners. Although he did not observe Jones going into the roadway to collect money from travelers, Thompson believed that Jones' location posed a safety hazard to himself and the public. He telephoned his supervisor, who agreed that Thompson had probable cause to believe that Jones was violating § 21-44.1.

At the trials in these two cases, the Court found that the evidence was insufficient to support a conviction for violating § 21-44.1.[9] As to the July 4, 2008 charge, however, the Court did find Jones guilty of trespass. Officer Wilburn had arrested Jones on numerous prior occasions for violating § 21-44.1 for holding a similar sign about Jesus with dollar signs in the corners. Wilburn does not recall that any of these earlier charges were dismissed.

### 3. Other Evidence

The undisputed evidence also indicates that in 2005, Jones filed a complaint with the RCPD, alleging that Officer D. K. Hedrick used excessive force against him in the course of arresting him for being drunk in public and for violating the aggressive solicitation ordinance.[10] During their encounter, Jones admitted to Hedrick that he often solicited money at the intersection of Hershberger Road and Valley View Boulevard, because "[i]t's the best place in town to make money." Jones has made no complaint – to Hedrick or the RCPD's Professional Standards Unit – about the City's enforcement of the aggressive solicitation ordinance or about his First Amendment rights being violated by his wrongful arrests under that ordinance.

Finally, Jones has alleged that RCPD Chief Gaskins knew or should have known about the dismissal of prior charges under § 21-44.1 because in 2003, Gaskins was subpoenaed to testify as a witness in a case brought in 2002 by Robert Richards in the Roanoke City Circuit Court, CR02000140, that was ultimately dismissed for insufficient evidence. In answer to interrogatories, however, Gaskins denies that he was a witness in the Richards trial; he also states that he was not aware of the outcome of the Richards case and so did not implement any policy regarding arrests under § 21-44.1, based on that outcome.

---

[9] The parties dispute whether or not Jones argued that his arrest violated his First Amendment rights.

[10] Department investigation indicated that Hedrick's use of force against Jones was justified, and on September 14, 2005, Jones was convicted of felony assault against a police officer.

## II. Discussion

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

A verified complaint or other submissions filed by a pro se prisoner are to be considered as affidavits and may defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979). Although the court must view the evidence in the light most favorable to the nonmovant, the court "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006) (quotation omitted).

### A.

Jones's first claim is one for unlawful arrest under 42 U.S.C. § 1983, which imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. Specifically, Jones alleges that each of the charging officers violated his rights under the Fourth Amendment by arresting him without a warrant and without probable cause.

In moving for summary judgment with respect to this claim, defendants argue that they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When a government official properly asserts the defense of qualified immunity, he is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not make out a violation of a constitutional right; or (2) the right at issue was not clearly established at the time of the alleged misconduct. Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (citing Saucier v. Katz, 533 U.S. 194, 205 (2001)). As it is within the court's discretion to decide which of these questions to consider first, Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 816 (2009), the court begins by considering whether defendants' conduct violated Jones's rights under the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. Under United States Supreme Court precedent, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Probable cause exists if the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to conclude] that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). While probable cause demands "more than mere suspicion, . . . evidence sufficient to convict is not required." Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996); see also Michigan v. DeFillippo, 433 U.S. at 36 ("The validity of the arrest does not depend on whether the suspect actually committed a crime."). The Fourth Circuit has expressly held that warrantless arrests by police officers for misdemeanors committed outside of their presence . . . , do not violate the Fourth Amendment so long as the arrest is supported by

probable cause."[11] Shultz v. Smith, 264 F. Supp. 2d 278, 280 (D. Md. 2003) (citing Street v. Surdyka, 492 F.2d 368, 371-372 (4th Cir. 1974)).

Roanoke's City Code § 21-44.1 is entitled "Aggressive solicitation and sales; definitions; prohibited acts and penalties." The ordinance defines solicitation as:

> . . . to request an immediate donation of money or other thing of value from another person, regardless of the solicitor's purpose or intended use of the money or other thing of value. The solicitation may be, without limitation, by the spoken, written, or printed word, or by other means of communication.

§ 21-44.1(a)(1). Paragraphs (a)(2)(a) through (a)(2)(f) of § 21-44.1 describe conduct illustrating what "aggressive manner" means and includes. Paragraphs (b)(1) through (b)(6) of § 21-44.1 describe prohibited acts. Some of these prohibited acts require a showing that the defendant committed the solicitation in an aggressive manner. Section 21-44.1(b)(6), however, simply prohibits solicitation "[w]hile standing on or going into any street or highway, including medians, on ramps and exit ramps."[12] This section does not require a showing that the defendant's behavior in soliciting travelers was aggressive, but rather, prohibits soliciting in any manner at the specified locations.

Based on the facts known to Officers Wasileski, Person, Malloch, Thompson, and Wilburn when they each arrested Jones or issued him a summons, the court concludes that a reasonable officer on each occasion would have had probable cause to believe that Jones had committed a criminal offense. As indicated above, under § 21-44.1(a), solicitation may be by

---

[11] "Whether a summons constitutes a seizure for Fourth Amendment purposes is not clear." See Burrell v. Virginia, 395 F.3d 508, 514 n.6 (4th Cir. 2005) (citing Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999) ("Absent any evidence that [plaintiff] was arrested, detained, restricted in his travel, or otherwise subject to a deprivation of his liberty before the charges against him were dismissed, the fact that he was given a date to appear in court is insufficient to establish a seizure within the meaning of the Fourth Amendment.")). However, where it is clear that the officers in question possessed probable cause to issue the summons, the court need not decide whether the summons constituted a seizure. Id. (citing Dorman v. Castro, 347 F.3d 409, 411 (2nd Cir. 2003) (refusing to reach the question of whether an issuance of appearance tickets was a seizure when the existence of probable cause was evident).

[12] Similarly, § 21-44.1(b)(5) prohibits solicitation of money or other things of value "[f]rom any operator or passenger of a motor vehicle that is in traffic on a public roadway," except in connection with emergency assistance requested by a motorist. The defendants' evidence, however, indicates that their concern about Jones' solicitation efforts focused on his location on medians or access ramps.

words "or by other means of communication." The fact that the words on Jones' signs did not explicitly ask passersby to give him money does not place his actions outside the ordinance definition of solicitation. The dollar symbols in the corners of his sign, the presence of which he does not dispute, communicated to viewers his desire for money. Even without the dollar symbols, however, the sign's question – "If Jesus was here, would you help him?"– was an implicit request for money or other assistance, designed to make Christian passersby reflect on well-known stories in which Jesus Christ admonished his followers that by helping others, they were helping him. The officers' observations of Jones retrieving what they believed to be money from vehicle occupants, as well as the cash found in Jones' pockets on one occasion, would support a reasonable officer's belief that Jones held his sign with the intent to plead for money and not simply to exercise his First Amendment right to free speech.

Moreover, § 21-44.1(b)(6) prohibits soliciting in specific locations such as medians, roadways, or on ramps and exit ramps. Jones does not dispute defendants' evidence that each time he was charged with violating § 21-44.1, he was standing in a median or at an exit ramp or on ramp of busy thoroughfares. He does not deny that officers, on four of the five occasions, also saw him enter the roadway itself to retrieve money from travelers in vehicles on the roadway. Clearly, these officers had probable cause to believe that Jones' actions violated the location provisions of § 21-44.1(b)(6).

Officer Thompson did not himself observe Jones entering the roadway to retrieve money from drivers and does not recall that Jones' sign had dollar symbols on it that day. Before issuing Jones a summons, however, this officer consulted with a supervisor who had personal knowledge that Jones had been convicted of aggressive solicitation for similar conduct in the past. Thompson was also concerned about the safety hazard that Jones posed to himself and others while standing in the median of a busy highway. Given the totality of the circumstances, the court concludes that an officer in Thompson's position would have had probable cause to believe that Jones was violating § 21-44.1(b)(6).

Jones' arguments in response to defendants' motion are unavailing. The fact that police reports did not include all the details set forth by the defendants in their affidavits, that Jones' confiscated signs have been destroyed under the RCPD evidence policy, and that no video tapes of the incidents exist, does not contradict the officers' affidavit evidence of what they observed before arresting Jones or issuing him a summons. The absence of any evidence that officers observed Jones taking any of the aggressive actions defined in other subsections of § 21-44.1 is irrelevant, because officers reasonably believed that Jones' behavior violated § 21-44.1(b)(6), which requires no showing of aggressive behavior.

Finally, Jones fails to demonstrate that his repeated charges for violating § 21-44.1 represent any significant pattern of police harassment. Jones claims that he informed at least some of these officers that he had a First Amendment right to hold his sign and that similar charges had been dismissed in the past on that ground. As indicated, however, Jones' observed behavior on each occasion supported the officer's reasonable belief that he was violating the ordinance and presenting a safety hazard. A judge's subsequent dismissal of the charge for insufficient evidence does not prove the absence of probable cause for the arrest or summons. Taylor, 81 F.3d at 433. Several defendants also knew of far more instances in which Jones had been convicted under § 21-44.1 for such conduct.[13]

For the stated reasons, the court concludes that all of the five defendant officers who charged Jones with violating § 21-44.1 are entitled to qualified immunity against Jones' claims for monetary damages. Furthermore, because Jones fails to establish that any of the challenged

---

[13] Jones claims that these past convictions under § 21-44.1 should not be used in defendants' favor, because many of them stemmed from guilty pleas, based on his mistaken belief that this provision prohibited solicitation in general and not only "aggressive solicitation," as indicated by the title of the ordinance. In fact, Jones' typical solicitation conduct meets the definition of prohibited solicitation under § 21-44.1(b)(6). In any event, defendants could rightly rely on past convictions for the same conduct in making a probable cause assessment, without knowing whether past cases were resolved by trial or guilty plea.

charges were brought without probable cause,[14] he fails to prove any ground on which he would be entitled to injunctive or declaratory relief. See, e.g., Goldstein v. Moatz, 364 F.3d 205, 219 n.17 (4th Cir. 2004) (finding that a party seeking a declaratory judgment "must show a realistic threat of future harm") (citing City of Los Angeles v. Lyons, 461 U.S. 95, 104 (1983)). The court will grant the motion for summary judgment on behalf of Defendants S. K. Wasileski, K. P. Malloch, M. E. Thompson, J. B. Wilburn, and T. L. Person.

## B.

Defendant Gaskins' motion for summary judgment must also be granted. Because the court has already determined that the officers had probable cause to bring the challenged charges under § 21-44.1(b)(6), Jones cannot succeed on any claim that police department training or policies regarding enforcement of the ordinance were inadequate. See Shaw v. Straud, 13 F.3d 791, 799 (4th Cir. 1994) (stating that supervisory liability requires finding that the "supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff") (internal quotations omitted).

## C.

Finally, the court concludes that Jones has no viable First Amendment claim that defendants' actions violated his right to free speech. While solicitation is a recognized form of speech protected by the First Amendment, this right is not absolute. United States v. Kokinda, 497 U.S. 720, 725 (1990). Content-neutral regulations of the time, place, and manner of expression in a public forum, such as a public street or highway, are permissible if "narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). Courts have upheld ordinances limiting the locations from which individuals may solicit

---

[14] As the court herein grants judgment for the defendants as to all of Jones' federal claims, the court declines to exercise supplemental jurisdiction over any related claims under state law, pursuant to 28 U.S.C. § 1367(c)(3).

contributions, when a significant governmental interest, such as traffic flow and safety, is served by the provision. See, e.g., Association of Community Organizations for Reform Now a.k.a. ACORN v. St. Louis County, 930 F.2d 591, 596 (8th Cir. 1991) (upholding ordinance prohibiting in-the-roadway solicitations of motorists as valid time, place, and manner restriction of First Amendment rights); ACORN v. City of Phoenix, 798 F.2d 1260, 1268-70 (9th Cir. 1986) (same); Int'l Soc'y for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge, 876 F.2d 494, 498 (5th Cir. 1989) (rejecting religious organization's First Amendment challenge to municipal ordinance prohibiting solicitation of motorists).

Roanoke's aggressive solicitation ordinance in general is content-neutral in that it applies to all forms of solicitation. In particular, § 21-44.1(b)(6) is narrowly tailored to further the local government's significant interest in maintaining a safe and efficient flow of traffic in critical areas of the roadway system such as access ramps and medians. Furthermore, the ordinance does not prevent Jones from soliciting with his sign in a nonaggressive manner in some other public area. The court will grant defendants' motion for summary judgment as to Jones' First Amendment claims.

### III. Conclusion

For the stated reasons, the court concludes that defendants are entitled to summary judgment as a matter of law and, accordingly, that plaintiff's motion for summary judgment must be denied. An appropriate order will issue this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and counsel of record for the defendants.

ENTER: This 23rd day of December, 2009.

/s/ Glen Conrad
United States District Judge